**Case No. 25-20131**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**Balvina Renteria,**
*Plaintiff–Appellant,*

**v.**

**Grieg Star AS;
Grieg Maritime Group AS;
Grieg Foundation,**
*Defendants–Appellees.*

---

On Appeal from the United States District Court
For the Southern District of Texas
No. 4:23-CV-02025
Hon. Kenneth M. Hoyt, *Presiding Judge*

---

OPENING BRIEF FOR PLAINTIFF-APPELLANT

---

James R. Long
    *Counsel of Record*
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007
(713) 222-3800 Telephone
(713) 222-3850 Facsimile

**Counsel for Plaintiff-Appellant**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff/Appellant | Defendants/Appellees |
|---|---|
| Balvina Renteria | Grieg Star AS<br>Grieg Maritime Group AS<br>Grieg Foundation |
| **Counsel for Plaintiff/Appellant** | **Counsel for Defendants/Appellees** |
| James R. Long<br>  ARNOLD & ITKIN LLP<br>6009 Memorial Drive<br>Houston, Texas 77007<br><br>Brandon C. Francis<br>  JOHNSON GARCIA LLP<br>7324 Southwest Freeway, Suite 545<br>Houston, Texas 77074<br><br>Charles F. Herd, Jr.<br>  HERD LAW FIRM<br>19500 Tomball Parkway, Suite 250<br>Houston, Texas 77069 | Robert L. Klawetter<br>Christina K. Schovajsa<br>  SCHOUEST, BAMDASM SOSHEA,<br>  BENMAIER & EASTHAM PLLC<br>1001 McKinney Street, Suite 1400<br>Houston, Texas 77002 |

| **District Judge**<br>Kenneth M. Hoyt |
|---|

Respectfully submitted,

/s/ *James R. Long*

James R. Long
Attorney of Record for Plaintiff-
Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff–Appellant Balvina Renteria respectfully requests oral argument. This appeal turns on the application of certain legal principles under the Longshore and Harbor Worker's Compensation Act ("LHWCA")—including the turnover duty and active control duty—to a factually complex record involving hidden hazards, vessel safety practices, and competing interpretations of Fifth Circuit precedent. Oral argument will aid the Court in resolving whether genuine disputes of material fact should have precluded summary judgment.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... II

STATEMENT REGARDING ORAL ARGUMENT ............................................. IV

TABLE OF CONTENTS ................................................................................ V

TABLE OF AUTHORITIES ........................................................................ VII

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION ..................................................................3

STATEMENT OF THE ISSUES .......................................................................4

STATEMENT OF THE CASE ..........................................................................5

SUMMARY OF THE ARGUMENT ..................................................................7

ARGUMENT ..............................................................................................9

   1.   The district court wrongly granted summary judgment based on Turnover Duty...........................................................................................9

      A.   The district court improperly wrested the issue of "open and obvious" from the jury, which could find that the fall hazard underneath the plastic sheeting was not known to Ms. Renteria. ..................................9

      B.   Grieg Star never warned Ms. Renteria of the latent defect leading to her injury, making summary judgment improper. .....................................12

   2.   The district court wrongly granted summary judgment based on Active Control Duty. ..................................................................................14

      A.   The district court improperly resolved a fact issue in favor of Grieg Star by finding that Grieg Star did not maintain control over the vessel's operations. .......................................................................................15

   3.   With these genuine issues of material fact existing, the district court improperly ruled on Ms. Renteria's gross negligence claim. ....................17

CONCLUSION ...........................................................................................19

CERTIFICATE OF SERVICE..............................................................................20

CERTIFICATE OF COMPLIANCE ...................................................................21

# TABLE OF AUTHORITIES

## Cases

*Clay v. Daiichi Shipping*,
    74 F. Supp. 2d 665 (E.D. La. 1999) ....................................................15

*Greenwood v. Societe Francaise De*,
    111 F.3d 1239 (5th Cir. 1997) ......................................................9, 10

*Howlett v. Birkdale Shipping Co.*,
    512 U.S. 92 (1994) ............................................................... 9, 13, 16

*In re Horizon Holdings, LLC*,
    2023 WL 1234567 (S.D. Tex. 2023) ..............................................18

*Manson Gulf, L.L.C. v. Modern Am. Recycling Serv., Inc.*,
    878 F.3d 130 (5th Cir. 2017) ..................................................... 10, 13

*Matter of Canal Barge Co., Inc.*,
    552 F. Supp. 3d 601 (E.D. La. 2021) ............................................15

*Pimental v. LTD Canadian Pac. Bul*,
    965 F.2d 13 (5th Cir. 1992) ....................................................10, 11, 16

*Rhodes v. Genesis Marine, LLC of Delaware*,
    No. CV 18-746, 2019 WL 3081699 (E.D. La. July 15, 2019) .........................15

*Romero v. Cajun Stabilizing Boats, Inc.*,
    501 F. Supp. 2d 816 (W.D. La. 2007), *adhered to on reconsideration*, No.
    CIV.A. 06-263, 2007 WL 4180599 (W.D. La. Nov. 21, 2007) *and aff'd in part,
    rev'd in part*, 307 Fed. Appx. 849 (5th Cir. 2009) ............................................16

*Scindia Steam Nav. Co. v. De Los Santos*,
    451 U.S. 156 (1981) ..........................................................................15

*Seals v. Shell Oil Co.*,
    12 F. Supp. 3d 890 (E.D. La. 2014) ................................................14

*Sobrino-Barrera v. Anderson Shipping Co., Ltd.*,
    2011 WL 5245396 (S.D. Tex. Oct. 24, 2011), *aff'd*, 495 Fed. Appx. 430 (5th
    Cir. 2012) ........................................................................9, 13

*Wortham v. Dow Chem. Co.*,
    179 S.W.3d 189 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ...................17

**Statutes**

28 U.S.C. § 1291 ...........................................................................................3

28 U.S.C. §§ 1332 .........................................................................................3

28 U.S.C. §§ 1441 .........................................................................................3

**Rules**

Fed. R. App. P. 32(a)(5) ...............................................................................21

Fed. R. App. P. 32(a)(6) ...............................................................................21

Fed. R. App. P. 32(a)(7)(B) ..........................................................................21

Fed. R. App. P. 32(f) .....................................................................................21

Fed. R. App. P. 4(a)(1)(A) .............................................................................3

## INTRODUCTION

This appeal arises from a serious workplace injury suffered by Plaintiff–Appellant Balvina Renteria—a longshore worker who fell ten feet onto the steel deck of a cargo hold due to a hidden hazard created and left unmarked by Defendants–Appellees (collectively referred here throughout as "Grieg Star"). Despite evidence that Ms. Renteria was not fully aware of the concealed gap masked by black plastic sheeting—and that Grieg Star itself knew of the danger yet never warned anyone—the district court took these issues from the jury and granted summary judgment in Grieg Star's favor.

On the day of the incident, Ms. Renteria was doing her job as she had been instructed. She trusted that the vessel had been made safe for cargo discharge operations. She stepped onto what appeared to be solid footing but was, in fact, a gap concealed by opaque sheeting placed by or on behalf of Grieg Star. The result was devastating—Ms. Renteria fell ten-feet causing her severe spinal injuries that have permanently changed her life.

The district court erred when it stripped Ms. Renteria of her opportunity to have a jury decide whether Grieg Star violated its turnover duty by failing to warn of a latent, concealed hazard—one that was anything but "open and obvious." The district court also erred when it weighed evidence showing Grieg Star's continuing oversight and authority over safety on the vessel—authority that triggered its active

1

control duty. The facts on record—that on summary judgment must be taken in the non-movant's favor (here, Ms. Renteria)—raised genuine issues of fact that should have been decided by the jury.

Generally, fact-intensive questions that arise under the LHWCA are entrusted to the jury. Because the record contains ample evidence that a jury could use to find Grieg Star liable under both the turnover duty and the active control duty—evidence that also could give rise to a gross negligence finding—the district court's order granting Grieg Star's motion for summary judgment should be reversed and the case remanded for further proceedings.

## STATEMENT OF JURISDICTION

This appeal arises from claims brought under the LHWCA in Texas state court. Following removal, the district court had federal diversity jurisdiction over this civil lawsuit because complete diversity exists between the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332, 28 U.S.C. §§ 1441; *see* ROA.8.

The district court entered final judgment on March 12, 2025. ROA.459. Plaintiff timely entered her notice of appeal on April 11, 2025. ROA.460-462; see FED. R. APP. P. 4(a)(1)(A). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Did the district court err in granting summary judgment on Ms. Renteria's claims under the turnover duty when evidence in the record established that (i) Ms. Renteria was not fully aware of the danger posed by the gaps in the rolls given the plastic sheeting placed by Grieg Star; and (ii) Grieg Star admitted knowing the danger yet never warned Ms. Renteria or other workers?

2.    Did the district court err in granting summary judgment based on the active control duty when Ms. Renteria raised issues of fact showing Grieg Star maintained active control over safety and the operations on the vessel?

## STATEMENT OF THE CASE

While working on Grieg Star's vessel, Plaintiff Balvina Renteria fell ten feet through a hidden gap between stacked cargo. ROA.340. Ms. Renteria was working in Hold 6 of the *M/V Star Juventas*, a vessel owned and operated by Grieg Star. *Id.* At the time, she was tasked with cargo discharge operations at City Dock 20 in the Port of Houston. ROA.349. Black plastic sheeting, originally placed by or on behalf of the vessel, was laid on top of several linerboard rolls concealing the void below. ROA.341. The sheeting had opaque regions that obscured visibility of the cargo and gaps beneath, creating an illusion of stability. *Id.* There were no warnings or safeguards in place to alert Ms. Renteria of the hazard. *Id.*

After she was hurt, Ms. Renteria reported the incident to her supervisor, Edward Davis, and completed a company accident report. *Id.* As a result of the fall, Ms. Renteria sustained severe spinal injuries that required extensive medical treatment and kept her from returning to work for a long time. ROA 339, 349.

The *M/V Star Juventas* where the incident occurred arrived at the Port of Houston on August 9, 2021, carrying various breakbulk commodities, including kraft linerboard. *Id.* The heavy paper product was shipped in large rolls. *Id.* The rolls were loaded onto the *M/V Star Juventas* by longshoreman in Livorno, Italy, under the authority and supervision of Captain Salilid and Chief Mate Buenaventura. ROA.342. The rolls were stowed in Hold 6 and interspersed with dunnage, airbags,

and black plastic sheeting. ROA.356. The cargo was unevenly distributed across the hold, leaving misaligned gaps between the rolls and an uneven disbursement of dunnage pillows and airbags. ROA.166, 356. To complicate matters, the airbags under the plastic netting—even when placed—are difficult to see. ROA.238–39.

Ms. Renteria believes she worked in Hold 6 for around three days until the incident occurred. ROA.127. The workers on site, including Ms. Renteria were never told not to walk on the black plastic sheeting sitting atop the rolls. ROA.236, 252. The workers even put a ladder atop the sheeting at a certain point. ROA.151.

## SUMMARY OF THE ARGUMENT

The district court erred by granting summary judgment to Grieg Star. The Court either failed to consider or improperly weighed and resolved genuine disputes of material fact that should have been submitted to a jury. This Court should reverse for three reasons.

*First*, on the turnover duty, the district court concluded that the danger posed by the plastic sheeting in Hold 6 was "open and obvious" as a matter of law because Ms. Renteria allegedly knew about the sheeting. But Fifth Circuit precedent treats the longshoreman's knowledge—and whether a hazard is open and obvious—as quintessential questions of fact. Here, substantial evidence shows Ms. Renteria was unaware of the concealed fall hazard created by plastic sheeting covering gaps between rolls of cargo. Unlike the cases relied on by Grieg Star, in which the hazards became immediately obvious to the plaintiffs, Ms. Renteria worked in the area for days without appreciating the risk, and no vessel officer ever warned her not to walk on or place a ladder on the sheeting. The vessel's failure to warn of this latent hazard violated its turnover duty, and the evidence on that point should have gone to the jury.

*Second*, on the **active control duty**, the district court mistakenly held that turning over the vessel on its own eliminated Grieg Star's duty, despite substantial evidence that Grieg Star retained control over safe operations. The record shows that

Grieg Star held daily safety meetings, maintained a continuous onboard presence, and retained authority to intervene in stevedoring operations. Vessel officers confirmed they expected crew members to stop unsafe practices, and corporate representatives testified that Grieg Star retained overall safety control of the vessel. These disputed facts should have precluded summary judgment on whether Grieg Star maintained active control over the area in which Ms. Renteria was injured.

*Third*, and finally, because the district court erred when it dismissed Ms. Renteria's negligence claims, it also erred by dismissing Ms. Renteria's gross negligence claim. Considering there is evidence that raises fact issues on ordinary negligence, Ms. Renteria should have had a chance to argue gross negligence to the jury at trial. Thus, the district court's order granting summary judgment on gross negligence must also be reversed. Indeed, evidence in the record—like Grieg Star's admitted knowledge of the sheeting's danger and its failure to warn or intervene— could support a jury finding of negligence and even gross negligence.

Because genuine issues of material fact exist on Ms. Renteria's claims, summary judgment was improper, and the district court's order of final judgment should be reversed and the case remanded for further proceedings.

**ARGUMENT**

## 1. The district court wrongly granted summary judgment based on Turnover Duty.

The district court erred by granting summary judgment on the issue of turnover duty when it concluded that: "Renteria's prior knowledge of the condition of the plastic sheeting generally in Hold 6 renders it open and obvious as a matter of law." ROA.456. True, if a "longshoreman knew of the defect, then it is considered open and obvious." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1246 (5th Cir. 1997). But based on the record, the district court improperly concluded Ms. Renteria had knowledge sufficient to satisfy this legal standard. In short, there are genuine issues of material fact on Ms. Renteria's knowledge of the dangerous condition that made summary judgment inappropriate.

### A. The district court improperly wrested the issue of "open and obvious" from the jury, which could find that the fall hazard underneath the plastic sheeting was not known to Ms. Renteria.

Generally, a vessel must "turn over" the ship in a condition that allows an expert stevedore to conduct cargo operations with reasonable safety. *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98–99 (1994). The vessel also must warn of any latent hazards in the cargo or vessel that are not open and obvious to a reasonably competent stevedore. *Id.*; *Sobrino-Barrera v. Anderson Shipping Co., Ltd.*, 2011 WL 5245396, at *3 (S.D. Tex. Oct. 24, 2011), *aff'd*, 495 Fed. Appx. 430 (5th Cir. 2012). When a "longshoreman knew of the defect, then it is considered open and obvious,"

*Greenwood*, 111 F.3d at 1246. But on the other hand, courts recognize that a hazard is not "open and obvious" simply because it can be seen; it must also be sufficiently apparent in its danger that a reasonably competent stevedore would avoid it or take special precautions. *Manson Gulf, L.L.C. v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017).

In its motion for summary judgment, Grieg Star argued that Ms. Renteria knew about the holes between the rolls of paper in Hold 6. In doing so, Grieg Star relied heavily on this Court's holdings in *Greenwood* as well as *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 16 (5th Cir. 1992). ROA.112. Similarly, the district court gave most, if not all, its attention to these cases in determining whether Ms. Renteria had knowledge sufficient to make the defect open and obvious. But on closer look, these cases actually undermine Grieg Star's position and the district court's ruling, as they highlight the factual disputes regarding Ms. Renteria's knowledge of the defect in Hold 6.

In *Greenwood*, the plaintiff was a longshoreman injured while unloading pipe from a vessel after a slewing brake on a crane malfunctioned. 111 F.3d at 1242. The plaintiff testified on direct examination that as soon as he began operating the crane, he became aware of the defective slewing brake. *Id.* at 1246. So while the defect was latent before, it became obvious to the plaintiff as he used the crane. *Id.* at 1246–47.

In *Pimental*, the longshoreman-plaintiff was injured while unloading cargo from a vessel after slipping and falling on oil and grease. 965 F.2d 15. Multiple crane operators testified that the oil and grease was "immediately obvious to them." *Id.*

Unlike the plaintiffs in *Greenwood* and *Pimental*, Ms. Renteria was unaware of the fall hazard posed by the dangerous condition created by Grieg Star. While Ms. Renteria knew about the gaps between the rolls, the plastic sheeting covered the dangerous nature of the unprotected gap. In other words, Ms. Renteria was unaware whether there were spacers under the sheeting to prevent her from falling. By placing plastic sheeting over the gaps in the rolls and not ensuring that there was appropriate fall protection underneath, Grieg Star created a hazard that was nothing like the "immediately noticeable" hazard in *Pimental*. After looking at the evidence, Ms. Renteria's liability expert agreed that the sheeting concealed many irregular gaps between the rolls. ROA.342. She further opined that the gaps were not "open and obvious" considering the plastic was meant to serve as fall protection—protection that failed and allowed Ms. Renteria to fall and injure herself. *Id.*

Moreover unlike the hazard in *Greenwood*, the defect at issue here did not become known to Ms. Renteria as she began working. In fact, Ms. Renteria's multiple days of working confirms that she assumed the plastic sheeting was safe to walk on as her and the other workers would have walked on them multiple times given the type of work being performed. In a certain respect, Ms. Renteria would

have felt safer and more relaxed with the conditions, including the unknown safety hazard, as each day passed.

**B.** **Grieg Star never warned Ms. Renteria of the latent defect leading to her injury, making summary judgment improper.**

The Kraft linerboard was loaded onto the *MV Star Juventas* in Livorno, Italy, under the supervision of Chief Mate Buenaventura and Captain Salilid—employees of Grieg Star—and was initially placed by or for the vessel as a quasi-netting around the stow edges. ROA.342. The turnover duty requires vessel owners like Grieg Star to provide a safe working environment and to warn of latent hazards that are not open and obvious to a reasonably competent stevedore. Here, black plastic sheeting concealed the gaps and posed as fall protection, rendering the danger latent and not visible to a reasonably competent stevedore.

Grieg Star never conveyed any specific warning to the longshore crew not to walk or place a ladder on the plastic sheeting covering the large paper case rolls. The turnover duty obligated Grieg Star to warn stevedores of hidden or not obvious hazards. Captain Salilid acknowledged that if part of the cargo is unsafe to walk on and the chief officer does not specifically warn the stevedores, that failure violates his expectations as captain. ROA.191.[1] The turnover duty requires the vessel to warn

---

[1] The record cites refer the Court to citations from Captain Salilid's testimony that can be found in Plaintiff's response to Grieg Star's motion for summary judgment. As outlined in Appellant's motion to supplement the appellate record, Plaintiff inadvertently attached the incorrect transcript as Exhibit 2 to Plaintiff's response to Grieg Star's motion.

of hazards not reasonably known to the stevedores. *Howlett*, 512 U.S. at 98–99; *Sobrino-Barrera*, 2011 WL 5245396, at *3. Despite acknowledging the dangers of walking on the plastic sheeting, Chief Mate Buenaventura testified that he does not remember providing any specific warning as to the dangers it posed. ROA.233, 237.

Captain Salilid also confirmed that the plastic sheeting was not to be walked on and that he, as the ship's captain, expects his crew to step in and instruct longshoreman not to walk on the plastic if they are seen doing so. ROA.191–92. Ms. Renteria testified in her deposition that no one from the vessel ever communicated with her about the sheeting, and that as a result she did not appreciate that there were holes beneath the plastic openings. ROA.236, 252. Further still, Ms. Loveland, Ms. Renteria's expert, noted that neither the stowage plan nor the cargo documents mention large, irregular gaps. ROA.342. In short, there is no evidence that Ms. Renteria was warned that the plastic sheeting was not proper fall protection or that the condition was unsafe. ROA.342.

Because there was no pre-turnover notice that the plastic sheeting posed a risk, the hazard was effectively hidden from the stevedores' (and Ms. Renteria's) perspective. *See Manson Gulf, L.L.C. v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017) (noting that failure to warn of concealed hazards may breach the turnover duty). That the sheeting was "there to be seen" does not convert it into an open and obvious danger, particularly when the crew itself admits it never

characterized the netting as hazardous. *See Seals v. Shell Oil Co.*, 12 F. Supp. 3d 890, 897 (E.D. La. 2014). Moreover, the fact that the stevedores placed a ladder on top of the plastic sheeting demonstrates that neither Ms. Renteria nor the other longshore workers realized (or had been told) the area was unsafe to stand or climb on. To put it simply, while Ms. Renteria was aware of the gaps between the rolls generally, the presence of the plastic sheeting prevented her from fully understanding the danger posed by irregular gaps and inadequate fall protection. That is especially true considering the fact that Grieg Star gave no safety instructions about walking on the sheeting and allowed workers to walk on it without warning or other instructions.

Based on these issues of fact, the district court erred when it granted summary judgment and dismissed Ms. Renteria's claims under the turnover duty.

**2.      The district court wrongly granted summary judgment based on Active Control Duty.**

The district court also erred when it granted summary judgment under the active control duty. In its order, the district court ruled that "Grieg Star's active control duty was not implicated by its presence on the vessel" after it had initially turned over cargo operations to the stevedore. ROA.457. But this ruling directly ignores established precedent showing that a vessel owner may be liable in circumstances similar to this case.

Once stevedoring operations begin, the vessel owner generally cedes direct control to the stevedore. But if the vessel "actively involves itself" in cargo

operations or exercises ongoing authority over the area, it may be liable for failing to prevent injuries. *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 167 (1981); *Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 671 (E.D. La. 1999). Put differently, if the vessel retains "active control" of the methods or equipment in use, a duty of reasonable care arises. *Matter of Canal Barge Co., Inc.*, 552 F. Supp. 3d 601, 606 (E.D. La. 2021).

> **A.** **The district court improperly resolved a fact issue in favor of Grieg Star by finding that Grieg Star did not maintain control over the vessel's operations.**

The district court found that Grieg Star did not maintain control over the vessel's operations merely because it had "turned over Hold 6 for cargo operations to the stevedore" days before the incident. ROA.456. But this conclusion ignores clear factual disputes regarding "control" that should have been resolved by the jury. *See Rhodes v. Genesis Marine, LLC of Delaware*, No. CV 18-746, 2019 WL 3081699, at *8 (E.D. La. July 15, 2019) (The district court denied summary judgment after finding that material facts were in dispute on whether the defendant maintained active control of the area where the plaintiff's accident occurred.). Here, the district court acknowledged evidence undermining its ruling yet improperly discounted the significance of Grieg Star's daily safety meetings and the continued presence of its employees on the vessel. ROA.457.

Under the active control duty, a vessel owner must exercise reasonable care to make the vessel safe if "(1) it actively participates in the operations, or (2) it maintains control over the area, or (3) such a duty is imposed upon the vessel owner by contract, positive law, or custom." *Romero v. Cajun Stabilizing Boats, Inc.*, 501 F. Supp. 2d 816, 823 (W.D. La. 2007), *adhered to on reconsideration*, No. CIV.A. 06-263, 2007 WL 4180599 (W.D. La. Nov. 21, 2007) *and aff'd in part, rev'd in part*, 307 Fed. Appx. 849 (5th Cir. 2009) (citing *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994)). This Court examined the active control duty in *Pimental* and found the defendant did not have active control of the vessel when the machinery that injured the plaintiff was being operated by the employees of the stevedore and when the accident took place in a location inaccessible to personnel besides the employees of the stevedore. 965 F.2d at 16-17.

This case is unlike *Pimental* because the Grieg Star employees retained critical control and access to Hold 6. The district court found that Grieg Star relinquished control to the stevedores, yet the testimony of Captain Salilid and Chief Mate Buenaventura and the photographic evidence show that vessel officers and/or the port captain do not agree that control was relinquished. Deposition testimony establishes that the vessel retained control over safety procedures, including oversight of cargo operations. For example, the captain and crew confirmed that they expected Greig Star employees to intervene if unsafe practices were observed.

ROA.195. In fact, Captain Salilid admitted that as captain he was "ultimately responsible for whatever happens on the vessel." *Id.* To be sure, the testimony on record reveals that Grieg Star remained responsible for overall safety on the vessel and that its employees and officers could intervene at any point. ROA.195–96. Corporate representative Yngve Rein further clarified that the vessel retains overarching safety control—direct evidence (that must be taken in Ms. Renteria's favor) implicating the active control duty. ROA.290-291. Said differently, the evidence shows that Grieg Star employees had access to Hold 6 since they could intervene at any point. And at the least, the evidence raises fact issues that should be resolved by the jury.

**3.    With these genuine issues of material fact existing, the district court improperly ruled on Ms. Renteria's gross negligence claim.**

As recognized by the district court, "[a] plaintiff who cannot support a cause of action for negligence cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence." *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 201 n.16 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (alterations added). For the reasons explained above, the evidence here may support an action for negligence should this Court allow the existing issues of material fact to be put in front of a jury.

Furthermore, under maritime law, gross negligence is an "entire want of care" that raises the belief that "the act or omission complained of was the result of

conscious indifference to the right or welfare of the person affected." *In re Horizon Holdings, LLC*, 2023 WL 1234567, at *4 (S.D. Tex. 2023) (citing general maritime negligence standards).

The evidence shows that Grieg Star recognized that the plastic sheeting shouldn't have been walked on, yet it *never once* told the longshore crew not to step or place a ladder on it. Grieg Star witnesses testified that if the crew saw an unsafe practice, they were duty-bound to intervene. Ms. Loveland explained that "[a]t the very least, evidence suggests the vessel (through its port captain or chief officer) understood the plastic was intended as a safety measure, knew it was being used in a manner that obscured cargo gaps, and still did not convey any specific warnings to the stevedores." ROA. 343. There are issues of fact as to whether Greig Star should have intervened or warned Ms. Renteria. Grieg Star witnesses testified that they knew the sheeting wasn't meant to support foot traffic but failed to warn. If proven at trial, such disregard for Ms. Renteria's safety could rise to gross negligence. Thus, having erred in dismissing Ms. Renteria's negligence claims, the district court also erred by granting summary judgment on gross negligence. This Court should reverse.

## CONCLUSION

For these reasons, the Court should reverse the district court's order granting Defendants-Appellants' motion for summary judgment and remand for further proceedings.

Dated: July 16, 2025.

Respectfully submitted,

ARNOLD & ITKIN LLP

/s/ *James R. Long*

James R. Long
 *Counsel of Record*
6009 Memorial Drive
Houston, Texas 77007
Tel: 713.222.3800
Fax: 713.222.3850
jlong@arnolditkin.com

**Counsel for Plaintiff-Appellant**

CERTIFICATE OF SERVICE

I certify that on this date, an electronic copy of this brief was served by notice of electronic filing using this Court's ECF System upon the following opposing counsel of record:

> Robert L. Klawetter
> Christina K. Schovajsa
>   SCHOUEST, BAMDASM SOSHEA,
>   BENMAIER & EASTHAM PLLC
> 1001 McKinney Street, Suite 1400
> Houston, Texas 77002
> rklawetter@sbsb-eastham.com
> cschovajsa@sbsb-eastham.com
>
> *Counsel for Defendants-Appellees*

> /s/ *James R. Long*
> James R. Long
> *Attorney of Record for Plaintiff-Appellant*
> Dated: July 16, 2025.

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 3880 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *James R. Long*
James R. Long
*Attorney of Record for Plaintiff-Appellant*
Dated: July 16, 2025.